**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| Anthony Bates, | No. 1:06-cv-00765-LG-RHW |
| Plaintiff, | |
| | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** |
| v. | |
| | (Civil Rights-Employment) |
| Northrop Grumman Ship Systems, Inc., | Jury Trial Demanded |
| Defendant. | |

## PRELIMINARY STATEMENT

1.  This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2.  This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

1

## PARTIES

3.   Anthony Bates was a Black employee of NGSS who was employed by NGSS for over 6 years.  Mr. Bates's employment was terminated by NGSS on or about October 23, 2000. He has never been reinstated although he has attempted on numerous occasions to become re-employed at NGSS.

4.   NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5.   NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7.   Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8.   On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9.   Attempts at conciliation regarding the finding of a racially hostile work environment,

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

2

which was and is statutorily required, failed.

## **PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

     a)  Dismissal of the class action allegations seeking compensatory and punitive damages;

     b)  Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

     c)  Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

     d)  Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

     e)  Dismissal of defendant LITTON INDUSTRIES; and

     f)  Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

3

of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Bates's severed action was assigned the case number of 1:06-cv-00765-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

a)  By failing to treat Blacks on an equal basis with Whites.

b)  By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

c)  By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

d)  By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e)  By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have inured to the

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

4

determent of Black employees historically.

f)   By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g)   By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h)   By demoting Black employees at a disproportionate rate as compared to White employees.

i)   By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j)   By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k)   By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l)   By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21. Plaintiff worked for 6 years in one or more of the departments at NGSS utilizing a

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

5

position entitled "leaderman" or "half-hat."  Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist.  Plaintiff made it known that he was been interested in being selected for the position of "leaderman "or "half-hat," however, plaintiff was never been selected for the position in spite of his 6 years at NGSS.  Plaintiff was not informed in any way that he was not qualified for the position of "leaderman" or "half-hat."  The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  This includes the following instances:

    a)  In 1999, plaintiff should have been selected for a work leaderman position, a position for which plaintiff was qualified, but for which he was not selected because of his race.

    b)  In December 1999, plaintiff was denied a promotion to the position of Joiner/Insulator Combination for which plaintiff was qualified, but for which he was not selected because of his race.

22. Plaintiff was not promoted during his 6 years at NGSS.  Plaintiff observed both that Black employees were not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who were promoted.  Plaintiff also observed that the availability of positions was not always publicized.  Plaintiff also observed, and himself experienced, that Black employees are used to train less senior and less experienced White employees, who then advance rapidly at NGSS.  Plaintiff has also observed that promotional opportunities are correlated with friendships and familial relationships.  Based on his own experiences and his observations of other Black employees' experiences, plaintiff therefore did not apply for promotive positions for which he was qualified, and plaintiff was never selected for promotion to any such position.  The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

6

23. Plaintiff has been demoted at times during which similarly situated White co-workers with fewer years of seniority were not demoted.  Plaintiff was not informed of the reason why he was demoted while White co-workers with fewer years of seniority were not.  This includes the following instance:

    a)  In or about 1997, plaintiff was demoted from his position in the carpentry department.  Plaintiff went to the welding department, which resulted in a reduction in his wages.  At that time, plaintiff's seniority in the company was 3 years, and in the department was 3 years.  White co-workers with fewer years of seniority were not demoted at that time.

24. Plaintiff has been laid off at times during which similarly situated White co-workers with fewer years of seniority were not laid off.  Plaintiff was not informed of the reason why he was laid off while White co-workers with fewer years of seniority were not.  This includes the following instances:

    a)  In or about 1997, plaintiff was laid off from the position of carpenter for approximately 5-6 months.  White co-workers with fewer years of seniority were not laid off at that time.  Plaintiff returned to work in the position of welder for approximately 6 months.

25. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job.  This includes the following instances:

    a)  When plaintiff worked in the welding department in or around 1998, plaintiff observed that he was paid less than similarly situated Whites.  He should have been paid as a first class welder.

26. Plaintiff made his supervisor(s) aware that he desired to be chosen to participate in sea trials and/or trips to Hawaii.  However, he was never selected to participate in any sea trials and/or trips to Hawaii in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

7

Employee Selection Procedures.

27. Plaintiff made his supervisor(s) aware that he desired to receive certain training, including tile training.  However, he was never selected for the requested training, in spite of being qualified to be chosen, while his similarly situated White colleagues were overwhelmingly been selected to do so.  Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.  This includes the following instances:

    a)  Plaintiff requested tile training from supervisor Tommy Richardson, but was told that training was not available because classes were already filled.  However, plaintiff's similarly situated White co-workers were provided with the training.

    b)  Plaintiff was not provided with the opportunity to be certified as a welder whereas White employees were.

28. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  This includes the following instances:

    a)  Plaintiff has been forced to work either in the hot sun or in the cold while similarly situated White employees were allowed to work in more comfortable conditions.

    b)  Plaintiff was assigned to work in the following departments, which are known to be among the dirtiest departments at NGSS:  Joiner/Insulation (17); Carpentry (10); and Welding (9).

    c)  Foreman Tanner assigned Black employees the dirtiest jobs in Department 10, whereas finish work was assigned to White employees.

    d)  Supervisor Kenny Andrews and Pete Lambert repeatedly required plaintiff to finish jobs at the point at which only the most difficult work remained, and, while he was working, Andrews would check on plaintiff every 20 minutes.

Plaintiff Anthony Bates's Complaint for                                                                     8
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

e)   Tommy Richardson, Kenny Andrews, and James Webb in particular assigned plaintiff a disproportionate amount of undesirable work as compared to White employees in Department 17.

f)   In or around 1999, plaintiff was required to work on the Venezuelan Armada's LUPO class frigates while similarly situated White employees were either not assigned such work or would be allowed to remove themselves from that assignment.  Plaintiff was forced to work for one year, with no safety protection other than safety glasses, amid human waste and asbestos on the LUPO class frigates.  Moreover, plaintiff was informed that the ship was contaminated with Hepatitis C.  Plaintiff suffered, among other symptoms, a skin rash after working on the ship that required medical treatment.  The majority of the employees assigned to this ship were Black.  Plaintiff complained to his supervisor, J.O. Richardson, about his working conditions but, to plaintiff's knowledge, nothing was done.

29. Plaintiff has been subjected to disparate treatment with regard to the imposition of discipline for actual or alleged transgressions for which plaintiff is informed and believes similarly situated White employees would not be disciplined.  This includes the following instances:

a)   Plaintiff's employment at NGSS was terminated October 23, 2000, on the grounds that plaintiff allegedly caused disorder in the shipyard.  However, on or about July 16, 1999, a White employee, Robert Cochran, put a noose around plaintiff's neck, and Cochran received nothing more than a few days lay off.

30. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981.  This includes the following instances:

a)   Plaintiff complained to Bill Thompson and Tommy Richardson about the presence of nooses and offensive racially derogatory graffiti in plaintiff's

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

9

workplace.  Shortly thereafter, plaintiff was repeatedly transferred to different departments and assigned more difficult work.

b)  In 1999, plaintiff's supervisor asked plaintiff to bring him a copy of a document referencing the organization Ingalls Workers for Justice, of which he is a member. Plaintiff was transferred to a less desirable work assignment the next day.

c)  In January 1999, plaintiff was disciplined for whistle jumping after having made a complaint.

d)  On or about July 16, 1999, after complaining, and filing a police report, about an incident in which a White employee, Robert Cochran, put a noose around plaintiff's neck, plaintiff was repeatedly transferred to different departments and assigned more difficult work.

e)  On or about August 18, 2000, plaintiff filed a grievance regarding an incident in which his supervisor, Webb, pushed plaintiff after plaintiff stated that Webb should respect him and not address him as a "stupid boy," or words to that effect. Plaintiff was laid off for three days while Webb was not disciplined.

f)  Plaintiff told his union steward, J.O. Richardson, that he would like to be a combination joiner insulator.  When the matter was discussed with Dave Whitney, Whitney stated that plaintiff should drop the lawsuit nonsense.

g)  Plaintiff was terminated October 23, 2000, allegedly for causing disorder in the shipyard.  Plaintiff believes that his race and his participation in the organization Ingalls Workers for Justice an/or his pursuit of his legal rights in a judicial forum were the motivating factor(s) for the termination of his employment.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

10

about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.  This includes the following instances:

    a) Throughout the duration of his employment at NGSS, plaintiff saw offensive racially derogatory writing, depictions, and/or graffiti in the restrooms on both banks of the shipyard.  Plaintiff also saw offensive racially derogatory graffiti on ships.  The graffiti plaintiff saw included references to joining the Ku Klux Klan; a Swastika; graffiti calling Martin Luther King, Jr. a "nigger" and a "monkey" and accusing him of adultery; graffiti that said, "Niggers need to go back to African where they belong;" "pictures" of Black women that said they "love white penises," accompanied by the word "nigger."

    b) NGSS was or should have been aware of the presence of the offensive racially derogatory graffiti.  Beginning in 1995 or 1996, plaintiff complained a couple of times per month about the offensive racially derogatory writings, depictions, and/or graffiti in the restrooms and on the ships.  Plaintiff's complaints were directed to various supervisors, including Leroy Goldsmith and Terry Skinner and to Ray Doty in Human Resources.

    c) Moreover, plaintiff was in the restroom with General Superintendent Dave Whitney in the Wet Dock Building in the downstairs restroom where some of the offensive racially derogatory writings, depictions, and/or graffiti was present.  Supervisor Tommy Richardson and Foreman Bill Thompson also saw offensive racially derogatory writings, depictions, and/or graffiti in the restrooms but, to plaintiff's knowledge, took no steps to remedy the situation.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

11

Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to such offensive racial epithets, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because Plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.  This includes the following instances:

    a) Plaintiff frequently heard White employees, including White supervisory personnel, use the word "nigger;" make racist jokes; and make racist comments, including racist comments about Black women, and comments like, "Why do black people listen to rap music?," and "That's what's wrong with some of you black people," and "Why do Blacks do this?"

    b) Plaintiff witnessed an employee named D.K. Ladmer telling a young Black worker that he did not know if he should take his belt off and spank him or hang him.

    c) NGSS was or should have been aware of the use of the word "nigger" and other racial epithets or comments, both because such languages was widely used, including by supervisors, but also because plaintiff complained about the language.  Plaintiff complained to his supervisor J.O. Richardson about racist jokes and comments, but, to plaintiff's knowledge, nothing was done.  In 1999 or 2000 plaintiff complained to the union about use of the word "nigger" at NGSS and was told nothing could be done.

    33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

12

have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.  This includes the following instances:

      a)  During his employment, plaintiff saw about 25 or more nooses at the shipyard. He saw 10-15 nooses in the yard, and also saw nooses hanging in bathrooms, on doors, at the bottom of the crane, in some of the berthing areas, on ships, in the yard, and in the bays.

      b)  NGSS was or should have been aware of the presence of the noose both because plaintiff complained about them and because of the prevalence of the nooses. Plaintiff complained about seeing nooses to supervisor Bill Thompson and complained to other supervisors, including Tommy Richardson and Joey Borries. Plaintiff also complained to Ray Doty in Human Resources.  The response that was forthcoming was insufficient to remedy the situation.

    34. Plaintiff was subjected to a hostile work environment based on plaintiff's race. Plaintiff was subjected to a mock lynching at NGSS on or about July 16, 1999, by a White supervisor named Robert Cochran.  The response to that incident – an incident that symbolizes the most odious of treatment to a Black male – was not sufficiently remedied by NGSS.

    35. Plaintiff has been subjected to a hostile work environment based on Plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 30, incorporated as though fully set forth herein.

    36. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

13

37. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

38. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

39. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 31 through 38, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

41. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

42. No plain, adequate, or complete remedy at law is available to plaintiff.  The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately compensated by monetary relief.  Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

43. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

44. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 43 and further alleges for a first claim for relief as follows:

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

14

45. Defendant has intentionally failed to provide Plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

46. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 45 and further alleges for a second claim for relief as follows:

47. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

48. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

49. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 39 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

15

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Grant equitable relief, including, but not limited to, reinstatement, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

d) Grant such punitive, general, and special damages as proved at trial;

e) Award Plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

f) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated:  September 29, 2006                SANDRA JARIBU HILL, Esq.
                                          Mississippi Workers' Center for
                                               Human Rights


                                          WILLIAM C. MCNEILL, III, Esq.
                                          The Legal Aid Society-Employment
                                               Law Center

                                          Counsel for Plaintiffs



                              By:    /s/ William C. McNeill, III
                                     WILLIAM C. McNEILL, III, Esq.



William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*

Plaintiff Anthony Bates's Complaint for                                    16
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California 94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi 38702-1223
(662) 334-1122

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros

Plaintiff Anthony Bates's Complaint for
Injunctive and Declaratory Relief and Damages
Case No. 1:06-cv-00765-LG-RHW

18